BRUNOT, J.
 

 The plaintiff was a hanking corporation and James A. Christian was its cashier. The defendant writes fidelity insurance. Defendant signed the bond of James A. Christian, and guaranteed the bank against loss suffered by it because of its said cashier’s wrongful acts. It is stipulated in the bond that:
 

 “The Standard Accident Insurance Company (hereinafter called the surety), in consideration of an agreed premium, binds itself to pay to the First National Bank, Pineville, La. (hereinafter called the employer), within thirty days after proof thereof, such pecuniary loss not exceeding twenty-five thousand ($25,000.00) dollars as the employer shall have sustained by any act or acts of fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction, or willful misapplication committed after the date hereof by James A. Christian, Shamrock and Reagan streets, Pineville, La. (hereinafter called the employee), in any position that he may occupy in the service of the employer, and before the termination of this bond, and discovered and notice given to the surety within twenty-four (24) months after the cancellation or termination of this bond, or within twenty-four (24) months after the death, resignation, or removal of the employee from the-service of the employer, prior to the cancellation or termination of this bond.”
 

 This is a suit by the employer, upon the bond, against the surety, for the recovery of $8,008.39, the sum of the alleged losses the employer suffered because of the alleged wrongful acts of its bonded employee. The defendant denies that the employee, James A. Christian, was guilty of any act of fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction, or willful misapplication of the plaintiff’s funds while in its service as an employee, or, in the alternative, it charges that, if such acts be proven, the officers and board of directors of the said bank were aware thereof a long time prior to the termination-of James A. Christian’s employment'with the bank and for a long time prior to notice to defendant of said acts.
 

 The court below heard the case, and rendered judgment in favor of the plaintiff and against the defendant for $6,845.59, with legal interest thereon from April 12, 1925, until paid, and for the costs of the suit. From this judgment the defendant appealed. Pending the appeal, in proceedings for the dissolution and liquidation of the affairs of the plaintiff bank, the Security Banking Company purchased all of the assets of the First National Bank of Pineville, including its right, title, and interest in and to this suit, and, upon proper motion filed in this court, it was substituted as the party plaintiff herein, instead of the original plaintiff.
 

 The plaintiff has answered the appeal and prays that the judgment be amended by increasing the amount thereof to the sum, with legal interest thereon, as prayed for in the petition. The judgment did not award the statutory 10 per cent, as attorney’s fees, and the answer to the appeal does not 'ask that it be amended in that respect.
 

 The record contains a mass of documentary evidence and 400 pages of oral testimony, all of which we.have carefully considered. The following facts are admitted or established by a fair preponderance of the proof, viz.:
 

 On or about March 19, 1925, discrepancies were discovered in the books of James A. Christian, the then vice president and cashier of the bank. The services of Christian as cashier of the bank were dispensed with and an audit of its books was ordered. The discharge of Christian as an employee of the bank resulted in an internal ’ disagreement between its officers and directors, some of whom, at that time, espoused his cause. The books of the bank were audited by Flournoy. & Beasley, public accountants, of Alexandria, La. The audit, or rather the data which was subsequently formulated into the auditors’ re
 
 *649
 
 port, required about 20 days’ research of the books of the bank for its compilation, but the final report of the auditors is dated June 2, 1925. After completing the audit, but before the report thereof was made, Mr. Beasley, one of the auditors, discussed the matter with Mr. P. M. Milner, a representative of the defendant company, at the bank in Pineville, and also at the office of Mr. Milner in New Orleans. The defendant was formally notified of the shortage of the cashier on June 20, 1925, and prior thereto its representative, Mr. Milner, was aware of and took part, on behalf of defendant, his client, in obtaining a correct audit of'the books of the bank. See letter of Mr. Milner, transcript, vol. 1, pp. 90, 91, 92. On July 12, 1925, the president of the plaintiff bank made demand upon the defendant for payment of the shortage shown on the auditors’ report. See document marked “Plaintiff B,”, transcript, vol. 1, p. 14. James A. Christian admits that he falsified the book entries to conceal the disposal of 31 shares of the capital stock of the bank (transcript, vol. 2, p. 199), and to increase the furniture and fixtures account from $7,863.94 to $10,-000 (transcript, vol. 2, p. 191).
 

 Prior to the organization of the plaintiff bank, James A. Christian was cashier of the Bank of Pollock. After his discharge from the employment of the plaintiff bank, he was indicted, tried, convicted and sentenced to the state penitentiary for wrongful acts committed by him while in the employ of the Bank of Pollock.
 

 It would be a waste of time and a useless task to review, in detail, the documentary and oral testimony admitted in evidence. The trial judge evidently found that the losses suffered hy the plaintiff bank are correctly reflected by the report of Flournoy & Beasley, its' auditors, with the exception of the loan of $3,000 to the Pollock Motor Company ; that these losses were caused by the fraud, dishonesty,' and wrongful acts of James A. Christian, the cashier of that bank; and that notice of the shortage of said cashier was given to the defendant company by the officers of the bank, with reasonable promptness, after its definite ascertainment by the audit .of the books. The audit shows shortages totaling $9,845.59. The judgment of the lower court is for $6,845.59, or $3,000 less than the total shown on the audit, which difference is the sum of the loan to the Pollock Motor Company. The specific shortages, unauthorized loans, and collaterals abstracted which appear in the report of the plaintiff’s auditors, are itemized in the transcript, vol. 1, pp. 14 and 15.
 

 Our reading of the record has led us to the conclusion that the trial judge correctly resolved the facts, and the judgment appealed from is therefore affirmed, at appellant’s cost.
 

 THOMPSON, J., takes no part.